**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERICA BERRIOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| KOS SERVICES, LLC, | ) | |
| d/b/a DENTAL DREAMS | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Erica Berrios ("Berrios"), by and through the undersigned attorneys, for her Complaint against Defendant KOS Services, LLC, d/b/a Dental Dreams, ("Dental Dreams") states as follows:

### INTRODUCTION

1.      Dental Dreams has submitted false and fraudulent claims to Medicaid and/or otherwise engaged in insurance fraud. As set forth below, Dental Dreams' actions and/or omissions include, but are not limited to fraudulently billing Medicaid and private insurers for radiography diagnostic tests administered by unqualified personnel.

2.      Berrios, a Dental Dreams OSHA Specialist, discovered its fraudulent practices, promptly complained internally, sought to correct the illegal practice and insisted that proper procedures be used going forward. For her efforts, Berrios was abruptly discharged for a pretextual reason despite satisfying all legitimate expectations.

3.      Additionally, for several months before her discharge, Berrios was supposedly placed on furlough.  Although she was placed in that status and received no pay from Dental Dreams, it still required Berrios to work at least three to four hours per day through the date that

her position was supposedly eliminated. Moreover, Berrios was misclassified as an exempt employee and not paid overtime as mandated by federal and state law even though her job duties did not permit Defendant to claim an exemption.

## Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. §§ 3730(h)(2) and 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Dental Dreams pursuant to 31 U.S.C. §§ 3730(h) and 3732(a) because it transacted business within this district and has committed acts within this judicial district that violated 31 U.S.C. §§ 3730(h) and 1331.

6. Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C §§ 1391 and 1395(a) because at all time relevant to this Complaint, Dental Dreams regularly conducted business within this district and maintained employees and/or offices within this District.

7. This action is not based on a public disclosure. It is based on information that is within the direct and independent knowledge of Berrios. As is set forth herein, Berrios notified Dental Dreams about the violations prior to filing this action. As a direct result of her notifications and warnings, Dental Dreams retaliated against Berrios in derogation of 31 U.S.C. § 3730(h)(2) and state statutory and common law rights.

## Parties

8. Berrios is a resident of Arlington, Virginia. She began working in the dental field while serving in the United States Air Force both in the United States and Iraq. Berrios became employed by Dental Dreams as an OSHA Specialist in 2014 covering Defendant's clinic locations

across the United States. Berrios brings this action based on her direct, independent, and personal knowledge, as well as upon information and belief.

9.     Dental Dreams is a dental group practice offering a variety of dental services, including dental examinations, x-rays, restorations, extractions, dentures, whitening, veneers, cleanings and similar services. Dental Dreams has clinics in California, Illinois, Louisiana, Maryland, Massachusetts, Michigan, New Mexico, Pennsylvania, South Carolina, Texas, Virginia and Washington, DC.  Its primary business office is located in Chicago, Illinois and it is licensed as a limited liability company by the Illinois Secretary of State.

10.     Dental Dreams is owned by Dr. Sameera Hussain, Khurram Hussain, David Wolle and Peter Stathakis.     Berrios' direct supervisor was Dr. Sameera Hussain.

11.     A significant number of Dental Dreams' patients are covered by Medicaid.

## False Claims Act

12.     The FCA prohibits knowingly presenting, or causing to be presented to the federal government a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1) (1986) and 31 U.S.C. § 3729(a)(1)(A) (2009). In addition, the FCA prohibits knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B). The FCA further prohibits knowingly concealing or knowingly making using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money to property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property back to the federal government. 31 U.S.C. § 3729(A)(1)(G). The FCA also prohibits conspiring with another person to defraud the Government by getting a false or fraudulent claim allowed or paid by the Government. 31 U.S.C. § 3729 (A)(1)(C).

13. The term "knowingly" as used in the FCA means that a person, with respect to information (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b). No proof of specific intent to defraud is required to show that a person acted knowingly under the FCA. *Id.*

14. 31 U.S.C. § 3730(h) of the False Claims Act provides, in relevant part, "Any employee, contractor or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop one or more violations of this subchapter." Available relief shall include reinstatement with the same seniority status that employee, contractor or agent would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

15. Any person who knowingly violates the FCA is liable for civil penalties up to $10,000 per false claim, subject to adjustment for inflation, plus three times the amount of damages that the Government sustains as a result of the defendant's actions. 31 U.S.C. § 3729(a). These civil penalties increase to up to $23,331 per false claim for claims submitted after June 19, 2020 and including treble damages. 28 C.F.R. §85.5.

## Medicaid Rules and Regulations

16. The United States, through the Department of Health and Human Services (DHHS), administers the Grants to States for Medical Assistance Programs established by Title XIX of the

Social Security Act under 42 U.S.C. § 1396-1396w-5 (the "Medicaid Program"). The objective of the Medicaid program is to provide medical insurance for covered services to any person who are receiving state welfare benefits, to certain disabled person, to qualifying pregnant women or children, to individuals whose income does not exceed 133 percent of the poverty line applicable to a family of the size involved or persons who are under 26 years of age who were in foster care under the responsibility of the state. DHHS has delegated the administration of the Medicaid Program to the states and its component agency, the Centers for Medicare and Medicaid Services ("CMS").

17.     The Medicaid Program includes dental services and medical and surgical services furnished by a dentist. 42 U.S.C. §§ 1396d (a)(5)(A) and (a)(10).

18.     As a prerequisite to enrollment as a provider in the Medicaid Program, medical providers are required to comply with federal and state standards and ensure that the services provided to Medicaid recipients are of high quality. 42 U.S.C. § 1396a(a)(22).

19.     Medical treatment and services by physicians are generally reimbursable under the Medicaid Program if the services provided are reasonable and medically necessary. The physician or entity seeking reimbursement, however, must meet certain obligation. These obligations include the following duty to:

     a.    Safeguard against unnecessary utilization of care and services. 42 U.S.C. § 1396a(a)(30(A);

     b.    Not make false statement or misrepresentation of material facts concerning requests for payment under the Medicaid program. 42 U.S.C. § 3120a-7b(a)(1) & (2); 1320a-7; 1320a-7a;

     c.    Provide economical medical services, and then, only where medically necessary, 42 U.S.C. § 1320c-5(a)(1);

     d.    Provide evidence that the service given is medically necessary, 42 U.S.C § 1320c-5(a)(3);

     e.      Assure that such services are not substantially in excess of the needs of such patients. 42 U.S.C. §1320a-7(b)(6) & (8);

     f.      Not submit or cause to be submitted bills or requests for payment substantially in excess of the physician's usual charges for the same treatment or services. 42 U.S.C. § 1320a-7(b)(6)(A);

     g.      Certify when presenting a claim that the service provided is a medical necessity. 42 U.S.C § 1935n(a)(2)(B); and

     h.      Not as a matter of billing policy waive co-payment amounts in violation of the federal anti-kickback and self-referral statutes. 42 U.S.C. § 1320a-7a(a)(5); 42 U.S.C. § 1320a-7a(i)(6).

20.     CMS has determined that one form of an "improper claim" is billing for services that were performed by an improperly supervised or unqualified employee.[1]

21.     Under regulations promulgated by the Michigan Department of Licensing and Regulatory Affairs, dental assistants may not operate dental radiographic equipment unless they have successfully completed an approved course in dental radiography and operate the equipment under general supervision.  Mich. Admin. R. § 338.11403(f).

22.     The Michigan Dental Association's Radiography Training Program frequently asked questions further explain:

> How closely does the dentist have to supervise when the assistant is taking the radiographs? The Supervising Dentist must be in the same room watching the assistant the entire time radiographs are being taken and must evaluate the assistant's technique. The assistant is not legally allowed to take radiographs under general supervision until the assistant receives a certificate saying that the radiography training course has been successfully completed.[2]

---

[1] See CMS Medicare Learning Network, *Medicare Fraud & Abuse:  Prevent, Detect, Report*, (Feb. 2019), p. 11 of 27 (booklet indicates that this and other prohibitions apply to all Federal Healthcare Programs, including Medicaid); US Dep't. of Health & Human Servs., Office of Inspector General, *A Roadmap for New Physicians, Avoiding Medicare and Medicaid Fraud and Abuse*, p. 10.

[2] Microsoft Word - Program FAQs_11-19.doc (michigandental.org)m

**<u>Defendant's Fraud, Plaintiff's Complaints and The Retaliation Against Her</u>**

23.     On or about July 15, 2020, Berrios learned that one of the Defendant's offices in Michigan (Defendant's East Pointe location) was utilizing an individual to operate radiographic equipment who did not comply with Mich. Admin. R. § 338.11403(f) or the Michigan Dental Association's Radiography Training Program requirements.

24.     The Defendant was billing private insurance companies and Medicare for the unqualified assistant's operation of radiographic equipment despite not being authorized to do so.

25.     Defendant was requiring the assistant to operate equipment without being under the supervision of a dentist and the assistant performing the work had not received her Michigan-mandated certificate.

26.     Plaintiff insisted that to avoid any possible liability, the clinic would need to have dentists take patient x-rays until the dental assistant was appropriately licensed.

27.     Within approximately 48 hours of Berrios insisting that Defendant comply with Michigan licensing credentials, Defendant made the decision to fire Berrios.  The decision to fire her was a direct result of her insistence that Defendant comply with the law.

28.     Dental Dreams' claimed job elimination should be found to be unworthy of credence.  Earlier in the week of July 13, 2020, before the issue with the Michigan dental assistant arose, one of the Defendant's senior officials told Plaintiff to make travel arrangements to the State of Massachusetts because dental staff in that location needed to receive OSHA training.  In other words, it was not until she insisted that Dental Dreams comply with the law that she was fired.

## COMPENSATION ISSUES

29.     Berrios also brings claims for minimum wage and overtime wages under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq*. and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq*.

30.     Dental Dreams is an enterprise engaged in commerce within the meaning of Section 203(s)(1)(A) of the FLSA.

31.     During the last three years, Dental Dreams' annual gross volume of sales made or business done has exceeded $500,000, exclusive of excise tax.

32.     During her employment, Berrios regularly performed services for Dental Dreams within the State of Illinois.

33.     Dental Dreams was Berrios' "employers" within the meaning of the FLSA and the IMWL.  See 29 U.S.C. § 203(d); 820 ILCS 105/3(c).

34.     Berrios was Dental Dreams "employee" within the meaning of the FLSA and the IMWL.  29 U.S.C. § 203(e)(1); 820 ILCS 105/3(d).

35.     Berrios worked for Dental Dreams within the last three years.

36.     During her employment, Berrios' job duties consisted of conducting mock inspections of Dental Dreams' offices, performing annual OSHA training, conducting clinical or CPR training on an "as needed" basis, ensuring that clinical staff complied with licensing requirements, ensuring that licensing documents were on file and responding to any OSHA complaints that arose.

37.     None of the above job responsibilities or the other tasks that Berrios performed made her exempt from receiving overtime pay.  Nonetheless, Defendant designated Berrios as an exempt employee to avoid having to pay her overtime compensation.

38.     Rather than paying Berrios proper overtime wages of one and one-half times her regular rate of pay for all hours worked in excess of forty hours per work week, Dental Dreams paid Berrios a salary and quarterly bonuses.

39.     Berrios regularly worked from 60 to 70 hours per week.  She was constantly required to travel across the country and would regularly perform work duties continually between 5:00 AM and 11:00 PM.

40.     On March 20, 2020, Dental Dreams told Berrios that it was placing her on furlough and halted all compensation payments to her.  Despite being placed on furlough, Dental Dreams still continued to demand that Berrios perform work for it, including constant email and telephone communications, responding to inquiries and ensuring that clinical staff complied with licensing requirements.

41.     During the period of the ostensible "furlough," Berrios was required to and did work for Dental Dreams for many hours per day.  Nonetheless, she received no compensation of any kind from Dental Dreams during this period.  By way of example, in May 2020, Defendant assigned to the Plaintiff registration and tracking of the certification program for dental assistants. She was still on furlough during this time and not receiving compensation for her time spent doing this.

### COUNT I

### INSURANCE CLAIMS FRAUD PREVENTION ACT
### (Against Dental Dreams)

42.     Plaintiff hereby realleges and incorporates paragraphs 1 through 38 of this Complaint, as if fully set forth herein.

43.     The Illinois Insurance Claims Fraud Prevention Act (the "IICFPA") extends civil penalties to existing criminal remedies for fraud against private insurance companies.  See 740

ILCS 92/5(b). The IICFPA further prohibits harassment or threats or discrimination against persons who oppose insurance fraud. 740 ILCS 92/40 provides in relevant part that:

> An employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by her or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this Act, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this Act, shall be entitled to all relief necessary to make the employee whole. That relief shall include reinstatement with the same seniority status the employee would have had but for the discrimination, 2 times the amount of backpay, interest on the backpay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney's fees. An employee may bring an action in the appropriate court for the relief provided in this Section. The remedies under this Section are in addition to any other remedies provided by existing law.

44. Berrios had a good faith belief that Dental Dreams was engaging in insurance fraud by improperly billing insurers for radiographic services performed by unlicensed dental assistants. When Berrios protested and sought to halt this practice, Dental Dreams discharged her.

45. As a direct and proximate result of Dental Dreams's termination of her employment, Berrios suffered damages, including, but not limited to lost income, limitation of future job prospects and emotional distress.

WHEREFORE, Plaintiff Erica Berrios respectfully requests the following relief:

A. All damages available to her under the law;

B. Reinstatement;

C. Back Pay with Interest;

D. Future lost earnings;

E. Litigation costs;

F. Attorneys' fees; and

G.    Such other and future relied as this Court deems appropriate and just.

**COUNT II**
**Violations of False Claims Act – Retaliation 31 U.S.C. § 3730(h)**
**(Against Dental Dreams)**

46.    Berrios repeats and re-alleges each and every allegation contained in paragraphs 1-42 as if fully set forth herein.

47.    Berrios's actions described above constitute lawful action in furtherance of a False Claims Act action and/or efforts to stop violations of the False Claims Act, and, as such, Berrios engaged in protected activity under the False Claims Act and other laws.

48.    As a direct and proximate result of protesting and bringing Dental Dreams's false and fraudulent conduct to light, Berrios was subjected to retaliation by being discharged from employment in violation of the False Claims Act. 31 U.S.C. § 3730(h).

49.    As a direct and proximate result of Dental Dreams's termination of her employment, Berrios suffered damages, including, but not limited to lost income, limitation of future job prospects and emotional distress.

WHEREFORE, Plaintiff Erica Berrios respectfully requests the following relief:

A.    All damages available to her under the law;

B.    Reinstatement;

C.    Back Pay with Interest;

D.    Future lost earnings;

E.    Litigation costs;

F.    Attorneys' fees; and

G.    Such other and future relied as this Court deems appropriate and just.

## COUNT III
### Violations of Virginia Whistleblower Act. VA Code Ann. § 40.1-27.3
### (Against Dental Dreams)

50.     Berrios repeats and realleges each and every allegation contained in paragraphs 1-46 above as if fully set forth herein.

51.     Inasmuch as Dental Dreams operates clinics within the State of Virginia and Plaintiff is a Virginia resident, Defendant should be deemed an "employer" under Virginia law.

52.     Under the Virginia Whistleblower Act, VA Code Ann. § 40.1-27.3, which went into force on July 1, 2020, an employer shall no discharge, discipline, threaten, discriminate against, penalize or take other retaliatory action against an employee who in good faith reports a violation of federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official.

53.     On July 16, 2020, Berrios in good faith reported to her superior that Dental Dreams's dental and billing practices violated Michigan law and provisions of the federal Medicaid statutes due to Dental Dreams' use of unlicensed dental assistants to perform radiological services and repeatedly cautioned Dental Dreams to stop these practices.

54.     As a direct and proximate result of Berrios's actions to stop Dental Dreams' violations of federal and state law, Dental Dreams terminated Berrios on July 17, 2020.

55.     Such conduct was in violation of the Virginia Whistleblower Act, VA Code Ann. § 40.1-27.3.

56.     Through Dental Dreams's actions Berrios has suffered damages including, but not limited to, stress, anxiety, loss of income, loss of career opportunities, and humiliation.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendant awarding her the following relief:

A.     An injunction on Dental Dreams prohibiting further measures to violate the Virginia Whistleblower Act.

B.     An order reinstating Plaintiff to the position she held prior to her discharge or an equivalent position;

C.     An award of damages in the amount of Berrios's lost pay, supplemental compensation and benefits;

D.     An award of attorneys' fees, costs, and expenses; and

E.     An award for any other and further relief that the Court deems equitable, just and proper.

## COUNT IV
## OVERTIME UNDER FAIR LABOR STANDARDS ACT
### (Against Both Defendants)

59.     Berrios repeats and realleges each and every allegation contained in paragraphs 1 through 58 as if fully set forth herein.

60.     Under the FLSA, Berrios was entitled to be paid at the overtime rate by Defendants for each hour worked in excess of 40 hours each work week at a rate of one and one-half times her regular hourly rate of pay.

61.     Defendants failed to compensate Plaintiff at the proper overtime rate in violation of the FLSA because they misclassified her as an exempt employee.

62.     Upon information and belief, Defendants' decision to compensate Berrios in this manner was willful and deliberate because it was not based upon review of any policy or publication of the United States Department of Labor.

63.     Berrios is entitled to recover unpaid overtime wages for up to three (3) years prior to the filing date of this Complaint because Defendants' failure to pay overtime wages for hours

worked in excess of forty (40) hours per week was a willful violation of the FLSA. 29 U.S.C. § 207.

WHEREFORE, Plaintiff Erica Berrios respectfully requests that this Court enter a judgment against Defendants awarding her the following relief:

A.  A declaration that Defendants willfully violated the overtime provisions of the FLSA with respect to Berrios' employment;

B.  Unpaid overtime compensation for the three year period preceding the filing of this Complaint;

C.  An equal amount as and for liquidated damages;

D.  Prejudgment interest;

E.  An award of attorney's fees, costs and expenses; and

F.  Such further relief as the Court deems just and appropriate.

## COUNT V
## OVERTIME UNDER ILLINOIS MINIMUM WAGE LAW
### (Against Both Defendants)

64.  Berrios repeats and realleges each and every allegation contained in paragraphs 1 through 58 above as if fully set forth herein.

65.  Under the IMWL, Berrios was entitled to be paid at the overtime rate by Defendants for each hour worked in excess of 40 hours each work week at a rate of one and one-half times her regular hourly rate of pay.

66.  Defendants failed to compensate Plaintiff at the proper overtime rate in violation of the IMWL because they misclassified her as an exempt employee.

67.  Defendants' failure to pay Plaintiff at a rate of one and one-half times her regular rate of pay for all time worked in excess of forty (40) hours per work week entitles Plaintiff to

recover liquidated damages in the amount of two percent (2%) per month of the amount of the underpayment. 820 ILCS 105/12(a).

WHEREFORE, Plaintiff Erica Berrios respectfully requests that this Court enter a judgment against Defendants awarding her the following relief:

A.   Unpaid overtime compensation for the three year period preceding the filing of this Complaint;

B.   Liquidated damages pursuant to the formula set forth in 820 ILCS 105/12(a);

C.   Prejudgment interest;

D.   An award of attorney's fees, costs and expenses; and

E.   Such further relief as the Court deems just and appropriate.

## COUNT VI
## FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATION
### (Against Both Defendants)

68.   Berrios repeats and realleges each and every allegation contained in paragraphs 1 through 58 above as if fully set forth herein.

69.   Under the FLSA, Berrios was entitled to be paid at least the applicable minimum wage by Defendants for each hour worked.

70.   Commencing on March 20, 2020, in derogation of the FLSA's minimum wage requirements, Defendants failed to compensate Plaintiff at all while still requiring her to work.

71.   Berrios is entitled to recover unpaid minimum wages for the entire period in which she was not compensated for the work she performed.

WHEREFORE, Plaintiff Erica Berrios respectfully requests that this Court enter a judgment against Defendants awarding her the following relief:

A.    Unpaid minimum wages for the period between March 20, 2020 and Plaintiff's discharge;

B.    An equal amount as and for liquidated damages;

C.    Prejudgment interest;

D.    An award of attorney's fees, costs and expenses; and

E.    Such further relief as the Court deems just and appropriate.

## COUNT VII
## ILLINOIS MINIMUM WAGE LAW MINIMUM WAGE VIOLATION
### (Against Both Defendants)

72.    Berrios repeats and realleges each and every allegation contained in paragraphs 1 through 58 above as if fully set forth herein.

73.    Under the IMWL, Berrios was entitled to be paid at least the applicable minimum wage by Defendants for each hour worked.

74.    Commencing on March 20, 2020, in derogation of the IMWL's minimum wage requirements, Defendants failed to compensate Plaintiff at all while still requiring her to work.

75.    Berrios is entitled to recover unpaid minimum wages for the entire period in which she was not compensated for the work she performed.

76.    Defendants' failure to pay Plaintiff at least the applicable minimum wage entitles Plaintiff to recover liquidated damages in the amount of two percent (2%) per month of the amount of the underpayment.  820 ILCS 105/12(a).

WHEREFORE, Plaintiff Erica Berrios respectfully requests that this Court enter a judgment against Defendants awarding her the following relief:

16

A.    Unpaid minimum wages for the period between March 20, 2020 and Plaintiff's

       discharge;

B.    Liquidated damages pursuant to the formula set forth in 820 ILCS 105/12(a);

C.    Prejudgment interest;

D.    An award of attorney's fees, costs and expenses; and

E.    Such further relief as the Court deems just and appropriate.


### <u>DEMAND FOR JURY TRIAL</u>

Berrios demands a jury trial on all claims alleged herein.


Dated: November 30, 2020                          Respectfully Submitted:

                                                  ERICA BERRIOS
                                                  Plaintiff,

                                                  By:_____/s/ David Fish_____
                                                         One of Her Attorneys

David Fish
Seth Matus
The Fish Law Firm, P.C.
200 E. 5th Avenue, Suite 123
Naperville, IL 60653
630-355-7590
dfish@fishlawfirm.com
smatus@fishlawfirm.com
docketing@fishlawfirm.com